IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CR-25 |
| | ) | |
| DAVID MINER, | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Miner's Motion to Dismiss Counts Two and Three [Doc. 20], filed on August 8, 2011, and the Defendant's Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause [Doc. 22], also filed on August 8, 2011. The Government responded [Doc. 26] in opposition to both motions on August 29, 2011. The Court held a hearing on the motions on September 2, 2011. Assistant United States Attorney (AUSA) Frank M. Dale, Jr., represented the Government. Attorney Kim A. Tollison appeared on behalf of the Defendant, who participated by telephone. The parties presented oral argument on the issues. At the conclusion of the hearing, the Court took the motion, response, exhibits, and oral arguments under advisement.

## I. POSITIONS OF THE PARTIES

The Defendant is charged in a three-count Indictment [Doc. 3] with corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws, with the intent to secure an unlawful advantage or benefit for himself or others through frivolous and threatening communications with the Internal Revenue Service (IRS) and with others, urging them not to cooperate with the IRS from the approximate dates of November 8, 2003 to June 28, 2007 (Count One). The Defendant is also charged with willfully failing to file an income tax return as he was required by law for the 2004 and 2005 calendar years (Counts Two and Three). In his Motion to Dismiss Counts Two and Three, the Defendant argues that 26 U.S.C. § 7203, the statute under which he is charged in the Indictment, is merely a punishment statute and that the Indictment does not sufficiently notify him of his charges, rendering him unable to formulate a defense. In his Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause, the Defendant contends that he was arrested in Florida on an indictment that was never returned by a grand jury and that the cumulative effect of the Government's errors and the varying versions of the indictment in this case rises to the level of a due process violation, which demands dismissal of the Indictment.

The Government responds that the Indictment properly charges the Defendant with failing to file a tax return in violation of 26 U.S.C. § 7203. It further asserts that the Indictment is sufficient in that it tracks the language of the statute, unambiguously alleges each element of the offense, and alleges the facts constituting a violation of the statute in this case. In response to the Defendant's second motion, the Government contends that no substantive differences between the several purported versions of the indictment exist and that the Defendant was arrested pursuant to an arrest warrant issued by this Court, which was issued based upon an indictment returned by the grand jury.

## II. BACKGROUND

The Defendant was indicted by the grand jury in Knoxville, Tennessee, on March 15, 2011, and he was arrested in the Middle District of Florida on March 22, 2011. The Defendant's initial appearance and Rule 5(c)(3) proceedings were held in front of Magistrate Judge Donald Paul Dietrich on the day of his arrest, and the Defendant was transferred to the Eastern District of Tennessee on March 23, 2011. The Defendant filed his Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause on August 8, 2011 [Doc. 22]. The issue dealt with in that motion first arose at the Defendant's initial appearance and arraignment in Knoxville on April 27, 2011, when the indictment presented in court that day did not appear to be identical to the indictment presented to the Defendant at his initial appearance pursuant to Rule 5(c)(3) in Florida on March 22, 2011. After that observation was made, the Assistant United States Attorney looked in his file and found that additional copies of the indictment also appeared to have some differences. The Government attached eight exhibits to the its response [Doc. 26] to the Defendant's motion, seven of which were different documents from different stages, each at one point purporting to be the indictment in this case (Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4, Exhibit 5, Exhibit 6, and Exhibit 7). Exhibit 8 consists of emails related to this confusion exchanged between court officials and attorneys in Florida, and AUSA Dale in Tennessee.

In the ordinary course, the Court expects there to be two copies of an indictment in any case: 1) an exact original physically signed in ink by the grand jury foreperson and the Assistant United States Attorney, and 2) an exactly identical indictment copy with an electronic signature (an electronic original). One of the deputy clerks receives a packet with the original indictment and the electronic original inside, and within the hour of when the grand jury makes the return of an

3

indictment, assigns the case a number and randomly assigns both a magistrate judge and a district judge to the case. The deputy clerk normally fills the case number and judge assignments in on the copy with the ink signatures and gives that hard copy to the courtroom deputy to the assigned judge to open the case file on the Case Management/Electronic Case Filing (CM/ECF) system. The clerk's office then fills in the Eastern District of Tennessee case number on the arrest warrant and issues the arrest warrant by signing it.

Because having one version of an indictment with the ink signature of the grand jury foreperson and one version with an electronic signature is in accordance with the indictment procedures followed by the Court, the Court is not concerned about those minor discrepancies between Exhibits 1 and 2. The Court's concern lies in the fact that different iterations purporting to be the indictment in this case were passed around and relied upon by court officials and judges in both Tennessee and Florida. The Court's initial concern in this case was that someone had altered the indictment after it had been issued by the grand jury. Upon further review and the arguments of the parties, however, it appears that the changes in the document that appear on Exhibit 4 to the Government's response were actually made the day *before* the case was presented to and the indictment was returned by the grand jury. Unfortunately, the draft that went out on the day before was not identical to the indictment that the grand jury returned.

After considering the arguments of the parties and the exhibits to the United States' Response in Opposition of Pretrial Motions [Doc. 26], the Court finds the actual sequence regarding the differing versions, which purported to be the indictment in this case to be as follows:

AUSA Dale prepared a draft document of the indictment, which would charge the Defendant after being presented to and returned by the grand jury. Before the draft document (Exhibit 4) was

4

presented to the grand jury, someone in the United States Attorney's Office typed the "s/" electronic signatures of "Grand Jury Foreperson" and "Frank M. Dale, Jr."  The day before the Defendant was indicted by the grand jury, AUSA Dale emailed the draft document (Exhibit 4) as an "advance copy" to Special Agent Lee, the Knoxville IRS agent assigned to the investigation of the Defendant's case. The day after the Defendant was indicted on March 15, 2011, the Knoxville IRS agent, without the knowledge of the United States Attorney's Office in Knoxville, emailed the draft document, rather than a true copy of the Indictment actually returned by the grand jury (Exhibit 1), to an IRS agent in Florida.

The Florida IRS agent then emailed the draft document (Exhibit 5) to an AUSA in the United States Attorney's Office for the Middle District of Florida.  Prior to the Defendant's initial appearance and arraignment in the Middle District of Florida, the AUSA emailed the same draft document (Exhibit 6) to Maurya McSheehy, the Courtroom Deputy to the Honorable Wm. Terrell Hodges, U.S. District Judge for the Ocala Division.  Ms. McSheehy then filled in the Eastern District of Tennessee case number, "25" and the docket number of the matter before the Middle District of Florida by hand (see Exhibit 7).  This copy of the draft document initially sent from AUSA Dale to Special Agent Lee, with the purported electronic signature of the grand jury foreperson and the handwritten docket numbers, is the document, which was presented to the Defendant as the indictment returned against him at his initial appearance in Florida.

The grand jury in Knoxville in fact returned a different document than the draft document as the Indictment charging the Defendant (see Exhibit 1, Exhibit 2, and Exhibit 3).  At the hearing on September 2, 2011, the Government agreed that the document given to the Defendant in Florida was not the real indictment returned by the grand jury.  The Court finds that Exhibits 1, 2, and 3,

5

which are representations of the actual Indictment returned by the grand jury, are virtually the same document. Likewise, Exhibits, 4, 5, 6, and 7, which are copies of the draft document "advance copy" first emailed out before an indictment was returned by the grand jury in this case, are virtually the same document. All distinctions between the set of documents, which are representations of the actual Indictment (Exhibits 1 through 3), and the set of documents, which are different stages of the draft document, are stylistic differences (e.g. font, "foreperson" versus "grand jury foreperson," "FRANK M. DALE, JR." versus "Frank M. Dale, Jr.," "SEALED" versus not sealed, the statutes listed in a string cite at the top of the document on the draft version and not on the actual Indictment, the name of the judges and case number assigned listed on one version and not the other). The Court finds that all seven versions attached as exhibits to the Government's response are substantively *exactly* the same.

The Defendant was arrested on March 22, 2011, on an arrest warrant properly issued by the Clerk in Tennessee on March 21, 2011 [Doc. 27][1]. The arrest warrant issued in this case lists the Eastern District of Tennessee case number, that the Defendant was charged by indictment, and it briefly describes the violations of law with which the Defendant is charged. Arrest warrants in the Eastern District of Tennessee are issued based on the original ink-signed indictment returned by the grand jury. By way of practice, a copy of the electronic original of the indictment, with the "s/" signature, is generally provided to defendants with the warrant at the time of their arrests.

### III. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise

---

[1] Neither party has challenged the validity of the arrest warrant issued in this case.

Case 3:11-cr-00025   Document 31   Filed 09/30/11   Page 6 of 17   PageID #: 232

infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. Amend. V. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landam, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landam, 251 F.3d at 1079.

Generally, an indictment "returned by a legally constituted and unbiased grand jury," Costello v. United States, 350 U.S. 359, 363 (1959), is sufficient to justify procession to trial if (1) it contains the elements of the offense charged, and thus "sufficiently apprises the defendant of what he must be prepared to meet," United States v. Debrow, 346 U.S. 374, 376 (1953), and (2) it is sufficiently specific to protect the defendant against double jeopardy in a subsequent proceeding, see, e.g., United States v. Blandford, 33 F.3d 685, 705 (6th Cir. 1994); United States v. Phibbs, 999 F.2d 1053, 1086 (6th Cir. 1993). However, upon motion by the defendant, a charge contained in an indictment may be dismissed before trial if it is defective. See Fed. R. Crim. P. 12(b)(3).

7

A charge contained in an indictment is defective if it fails to state an offense. See United States v. Gatewood, 173 F.3d 983, 986 (6th Cir. 1999) ("a defendant who contends that the indictment fails to establish jurisdiction or to charge an offense may raise that challenge at any time") (citing United States v. Hart, 640 F.2d 856, 857 (6th Cir. 1981)); see also Fed. R. Crim. P. 12(b)(3)(B). In other words, if a charge alleges conduct by a defendant that cannot within reason be construed to be a crime, the Court may dismiss the charge as defective. See United States v. The, 535 F.3d 511, 515 (6th Cir. 2008) ("Claims that a statute named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment 'fails to state an offense.'") (citing United States v. Adesida, 129 F.3d 846, 850 (6th Cir. 1997); United States v. Foley, 73 F.3d 484, 488 (2d Cir. 1996); United States v. Meacham, 626 F.2d 503, 509 (5th Cir. 1980)).

In the instant case, the Defendant argues that Counts Two and Three of the Indictment fail to apprise the Defendant of the statute he is charged with violating because they do not point to the particular statute, which requires him to file an income tax return. The Court will address this motion first. Second, the Court will look at the Defendant's motion arguing that the existence of and discrepancies in the varying versions of the indictment in this case rises to the level of a due process violation demanding dismissal of the Indictment.

*(A) Motion to Dismiss Counts Two and Three*

Title 26 U.S.C. § 7203 (2002), under which the Defendant is charged in Counts Two and Three of the Indictment in this case, provides:

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or

8

Case 3:11-cr-00025   Document 31   Filed 09/30/11   Page 8 of 17   PageID #: 234

times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor. . .

The Court finds that the crime of failure to file a tax return under 26 U.S.C. § 7203 has two elements: 1) that the defendant is a person required to make a tax return, and 2) that the defendant, being a person required to make a tax return, willfully failed to make such return. In this case, the Defendant's argument about the sufficiency of the Counts Two and Three of the Indictment goes to the first element, specifically whether he has notice that he is a person required to file an income tax return. Title 26 U.S.C. § 6012 sets forth the "[p]ersons required to make returns of income," stating in relevant part that, "[e]very individual having for the taxable year gross income which equals or exceeds the exemption amount . . ." 26 U.S.C. § 6012 (2002).

In substance, Counts Two and Three of the Indictment [Doc. 3] in this case charge as follows:

COUNT TWO

(Failure to File a Tax Return - 26 U.S.C. § 7203)

During the 2004 calendar year, DAVID MINER, who was during that calendar year a resident of Gatlinburg, Tennessee, had and received gross income in excess of $7,950. By reason of such gross income he was required by law, following the close of the calendar year 2004, and on or before Friday, April 15, 2005, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Knoxville, Tennessee, or another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2005, in the Eastern District of Tennessee and elsewhere, to make an income tax return.
In violation of Title 26, United States Code, Section 7203.

COUNT THREE

(Failure to File a Tax Return - 26 U.S.C. § 7203)

During the 2005 calendar year, DAVID MINER, who was during that calendar year a resident of Gatlinburg, Tennessee, had and received gross income in

9

excess of $8,200. By reason of such gross income he was required by law, following the close of the calendar year 2005, and on or before Monday, April 17, 2006, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Knoxville, Tennessee, or another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 17, 2006, in the Eastern District of Tennessee and elsewhere, to make an income tax return.

In violation of Title 26, United States Code, Section 7203.

In United States v. Spine, 945 F.2d 143, 149 (6th Cir. 1991), the defendant argued that the Government failed to prove an essential element of tax evasion, charged under § 7201, when it did not "identify the statute, presumably § 6012, which imposed a legal duty upon him to pay income taxes." The Sixth Circuit rejected the defendant's argument because the indictment in that case alleged that the defendant "had taxable income for the years in question and yet did not file any returns," pointing out that "the indictment even went so far as informing Spine of the specific amount he owed." Id. The Sixth Circuit stated that "[t]he government was not required to specifically name 26 U.S.C. § 6012 in order to prove an essential element of tax evasion." Id. (citing United States v. Kahl, 583 F.2d 1351 (5th Cir. 1978)).

Further, in United States v. Gaumer, No. 93-4155, 1994 WL 269581, *4 (6th Cir. 1994), although worded differently, the defendant raised virtually the same issue as Defendant Miner does in his motion, and the Sixth Circuit rejected it, again citing Kahl, 583 F.2d at 1355. The defendant in Gaumer asserted "that the information failed to 'specify the statutes and/or regulations which allegedly impose upon defendant the requirement to [make] and file . . . income tax returns." Id. (citing the Appellant's brief). In that case, the Sixth Circuit wrote that "[t]he elements of the offense of failing to file an income tax return under 26 U.S.C. § 7203 'involve proof of failure to file and

10

willingness in doing so.'" Id. (quoting United States v. Buckley, 586 F.2d 498, 503-04 (5th Cir. 1978), cert. denied, 440 U.S. 982 (1979)). Finding that the defendant's argument failed, the Sixth Circuit noted that each of the counts in the information in that case alleged that the defendant "had gross income for the calendar year in question, that by reason of the gross income defendant was required by law to make a return for that calendar year, and that he willfully failed to file an income tax return for that calendar year," in violation of 26 U.S.C. § 7203. Id. Accordingly, the court found that the information in that case was sufficient because it stated all of the elements and sufficiently notified the defendant of the offense charged. Id.

Additionally, the Government in this case cites several cases from other circuits, which each stand for the proposition that an indictment charging a failure to file an income tax return does not need to specify the law requiring the defendant to file a return. See United States v. Roberts, 9 Fed. Appx. 573, 574 (8th Cir. 2001); United States v. Vroman, 975 F.2d 669, 670-71 (9th Cir. 1992); Kahl, 583 F.2d at 1355. All cases deciding the issue raised by the Defendant appear to have done so in the Government's favor.

In the instant case, Counts Two and Three of the Indictment charge the Defendant with failing to file an income tax return for the 2004 and 2005 calendar years. The Indictment cites § 7203 as the applicable statute in each of those counts. The Defendant argues that he cannot discern which specific provision in Title 26 requires that he file an income tax return from looking at the Indictment itself and that the Indictment is constitutionally insufficient as a result. While § 6012 requires the Defendant to file an income tax return, § 7203 is the only statute that criminalizes the act of failing to file one, making it the proper charging vehicle. Additionally, as in Spine, Counts Two and Three the Indictment here specify the amount of income, which the Defendant is charged

11

with exceeding for the respective years. See Spine, 945 F.2d at 149. The Court notes that § 7203 to some extent looks like a penalty statute and that best practice may be to cite both § 6012, requiring an individual to file a return, and § 7203, making it illegal not to file a required return, in an indictment or information. However, both the decisions of the Sixth Circuit and other circuits on this issue indicate that the way in which the Indictment in this case charges the Defendant is sufficient. Accordingly, the Court recommends that the Defendant's Motion to Dismiss Counts Two and Three [Doc. 20] be denied.

In Roberts, cited by the Government, when determining that the defendant received constitutionally sufficient notice of the charges against him, the Eighth Circuit noted that the district court in that case required the government to file a bill of particulars specifying which particular statute required that particular defendant to file an income tax return. Roberts, 9 Fed. Appx. at 574. The Court finds that a bill of particulars could arguably be beneficial in a case of this type.[2]

*(B) Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause*

The Constitution requires that "[n]o person shall be . . . deprived of life, liberty, or property without the due process of law[.]" U.S. Const. amend. V. In this case, the Defendant argues that the Government's actions and the purported indictment discrepancies, when taken as a cumulative whole, amount to a violation of the Defendant's due process rights, rendering dismissal of the Indictment the only possible remedy. The Government responds that, even taken as a whole, the

---

[2] However, on September 20, 2011, a Superceding Indictment [Doc. 30] was filed in this case. The Court notes that the Superceding Indictment charges the same violations as the original Indictment [Doc. 3], but additionally charges in Counts Two and Three that the Defendant was required by the amount of his gross income "pursuant to 26 U.S.C. § 6012" to file an income tax return. Accordingly, a bill of particulars is no longer necessary in this case.

12

errors it made in this case do not rise to the level of a due process violation because the different versions of the Indictment were substantively the same, the Defendant was arrested on a warrant, rather than on the Indictment, and the Defendant is fully aware of the charges against him.

The Court finds, and the parties do not dispute, that the document provided to the Defendant at the time of his initial appearance and Rule 5 proceeding in Florida was not the Indictment returned by the grand jury in this case. The Court must next turn to what result that determination demands.

Rule 9 of the Federal Rules of Criminal Procedure provides:

> (a) Issuance. The court must issue a warrant . . . for each defendant named in an indictment . . . The court must issue the arrest warrant to an officer authorized to execute it . . .
> (b) Form.
> > (1) Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment or information.
> > . . .
> (c) Execution or Service; Return; Initial Appearance
> > (1) Execution or Service.
> > > (A) The warrant must be executed . . . as provided in Rule 4(c)(1), (2), and (3).
> > > (B) The officer executing the warrant must proceed in accordance with Rule 5(a)(1).
> > (2) A warrant or summons must be returned in accordance with Rule 4(c)(4).
> > (3) When an arrested or summoned defendant first appears before the court, the judge must proceed under Rule 5.

Fed. R. Crim. P. 9. Rule 4(c)(3)(A) of the Federal Rules of Criminal Procedure states "[u]pon arrest, an officer possessing the warrant must show it to the defendant." Rule 4 also allows an officer to make an arrest without possession of the warrant, so long as the officer informs to defendant of its existence and shows it to the defendant "as soon as possible," if he so requests. Fed. R. Crim. P. 4(c)(3)(A).

13

Case 3:11-cr-00025   Document 31   Filed 09/30/11   Page 13 of 17   PageID #: 239

Rule 5 sets out the requirements for a defendant's initial appearance, specifying procedures to be followed when a defendant is arrested in a district other than where the offense was allegedly committed. Fed. R. Crim. P. 5. In relevant part, Rule 5(c)(3) states that the magistrate judge in the district in which the defendant was arrested "must transfer the defendant to the district where the offense was allegedly committed if: (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and, (ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant . . ." Fed. R. Crim. P. 5(c)(3)(D)(i)-(ii). In the instant case, the Defendant argued at the September 2, 2011 hearing that the Florida magistrate judge's identity determination, made pursuant to Rule 5(c)(3)(D)(ii), was invalid because the document presented as the indictment in the Middle District of Florida was not the true Indictment returned by the grand jury in this case.

Despite the draft document improperly making its way to Florida, what Rule 9 and Rule 4 require for a proper arrest is not the presentation of the actual indictment returned by the grand jury, but a valid and properly issued arrest warrant. See Fed. R. Crim. P. 9; Fed. R. Crim. P. 4(c)(3)(A). If the arresting officer possesses the warrant at the time of arrest, he must show the warrant to the defendant. Fed. R. Crim. P. 4(c)(3)(A). Rule 4 says nothing, which can be construed as requiring that a copy of the indictment or information be shown or provided to a defendant at the time of his arrest. The Court finds that the fact that court practice is to include a copy of the indictment with the warrant when providing them to a defendant is merely traditional surplus and is not required by law or due process. In this case, this Court issued a valid arrest warrant in accordance with Rule 9(b)(1), based on the true Indictment returned by the grand jury and signed in ink, not based on any earlier draft document that may have been sent to Florida. The Defendant conceded at the

14

September 2, 2011 hearing that making an arrest on a warrant, without providing an indictment to the defendant, is sufficient to effectuate a proper arrest.

As to the Defendant's secondary argument at the September 2, 2011 hearing, that the presence of the draft document in the Middle District of Florida rendered the identity finding made by the magistrate judge there invalid, the Court finds that the magistrate judge in Florida neither needed to make his identity determination based on the indictment nor did he to do so. Rule 5, requiring the magistrate judge in the foreign district to make an identity determination, allows the judge to do so based on the indictment, the information, *or* the warrant. Fed. R. Crim. P. 5(c)(3)(D)(ii). The Rule 5(c)(3) documents sent to the Court from the Middle District of Florida [Doc. 4] show that the Defendant waived an identity hearing and admitted his identity. Further, on the last page of the documents from the Florida proceedings [Doc. 4], in the Findings and Order on Removal Proceedings Pursuant to Rule 5(c), Fed. R. Crim. P., Magistrate Judge Donald P. Dietrich wrote, "I find that DAVID MINER is the person named in the warrant for arrest, a copy of which has been produced." These findings indicate that the identity determination in Florida was made based on the arrest warrant, as allowed by Rule 5(c)(3)(D)(ii) and not on the Indictment, as argued by the Defendant in this case. The Court thus finds that no flaw existed in the identity hearing or determination in the Middle District of Florida and that the finding of the Defendant's identity and his removal by that court was proper.

That said, the Government's actions in preparing a purported indictment and emailing the document to its agents the day before with an "s/" signature of the grand jury foreperson before the matter went to the grand jury, set the problems in this case in motion. Although the draft document was not intended for further dissemination, it was in fact sent to more officials down the line. The

15

Government should *never* enter an electronic signature on a purported indictment before an indictment has been returned by the grand jury, and a copy of a draft indictment with the signature line filled, thus purporting to be an actual indictment, should *never* be sent outside of the U.S. Attorney's office, leading anyone that views it to believe it to be a true indictment.

While the Court in this case is not in any way condoning the Government's actions in sending out "advance copies" of indictments purporting to be the true electronic originals of indictments returned by the grand jury, the Defendant's motion to dismiss in this case alleges a due process violation. The Court finds that the primary purpose of the due process guarantee in this context is to ensure that defendants have sufficient notice of the charges against them, and the Defendant in this case had notice of which statutes he was charged with violating and of the facts constituting the alleged violations both through the summary of the offense on the arrest warrant [Doc. 27] and the fact that the substance of the charges was exactly identical on the draft document (Exhibit 7) presented to him in Florida and the actual Indictment returned by the grand jury (Exhibit 1).

In sum, the Court finds that the substance of all purported indictments in this case was exactly the same and that the Defendant had notice of the charges against him. The Defendant was arrested on a warrant and need not have been provided with the Indictment at the time of his arrest or at his initial appearance and Rule 5 hearing in the Middle District of Florida. Accordingly, the Court finds that the Defendant's assertions, even when considered together for their cumulative effect, do not rise to the level of a Fifth Amendment due process violation. The Court recommends that the Defendant's Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause be denied.

## IV. CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to dismiss the Indictment in this case. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Dismiss Counts Two and Three Statements **[Doc. 20]**, and the Defendant's Motion to Dismiss for Violation of the Fifth Amendment Due Process Clause **[Doc. 22]**, be **DENIED**.[3]

                                  Respectfully Submitted,

                                    s/ C. Clifford Shirley, Jr.
                                    United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).