# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | No. 3:11-CR-25 |
| ) | Judge Phillips/Shirley |
| DAVID MINER, ) | |
| ) | |
| DEFENDANT. ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by the United States Attorney for the Eastern District of Tennessee submits the following sentencing recommendations with respect to the defendant, David Miner. For the reasons set forth herein, the United States recommends that the Court impose a sentence at the upper end of the applicable Guideline range. Such a sentence would be consistent with the nature of Miner's offenses and the factors set forth in 18 U.S.C. § 3553. In addition, Miner should be ordered to pay restitution to the United States consisting of all unpaid tax liabilities for the years at issue, together with any applicable penalties, statutory assessments, and the costs of prosecution. *Id.*

## FACTUAL SUMMARY

Over the course of two decades, David Miner has sought to thwart the Internal Revenue Service in its administration of the tax laws. In addition to dodging his own tax responsibilities, he has encouraged others to do the same. As the United States demonstrated through testimony at trial, Miner sought to obstruct the IRS through his operation of two entities, IRx Solutions and the Blue Ridge Group.

IRx Solutions purported to "decode" and "correct" the IRS Individual Master Files (IMF) of individuals who wanted to evade their taxes. In exchange for a significant fee, Miner would prepare Freedom of Information Act requests through which taxpayers could obtain their IMFs from the Internal Revenue Service. As was demonstrated at trial, Miner's clients would be guided to submit numerous, sometimes redundant requests for the same files. Upon receiving their IMFs, the clients would forward them to the defendant, who would purportedly "decode" them and prepare a summary that pointed out numerous "errors" in the IRS files. Implicit in Miner's guidance to clients was the erroneous position that most individuals were not obligated to file tax returns or pay taxes, and that the IRS had perpetrated a massive, fraudulent scheme through which individuals would be classified as taxable entities (e.g., businesses).

Along with the "decoded" IMFs, Miner would provide his clients with Privacy Act requests and other letters to the IRS Disclosure Unit demanding that the IMFs be corrected. As a representative of IRS Disclosure testified at trial, the requests for modification of clients' IMFs were invariably denied. As the IRS Disclosure officer testified, the Privacy Act could not be used as the basis for modifying tax return information, as such changes could be effected only through the filing of amended tax returns. Moreover, the United States demonstrated at trial that there was no need to "decode" clients' IMFs, since there was no validity to Miner's claim that individuals were subject to taxation only through the "fraudulent" alteration of their tax files.

When the IRS Disclosure Unit refused to comply with the demands that the IMFs be modified, Miner provided his clients with letters threatening legal action against the IRS employees who refused to make the requested changes. In the materials accompanying Miner's "decodings," he even pointed out to his clients the need to identify the specific IRS employees that would be targeted with threats.

The defendant also operated the Blue Ridge Group, which purported to create "common law trusts," which Miner claimed were immune from federal taxation. For the purpose of analyzing Miner's trust instruments, the United States provided the jury with the testimony of retired Internal Revenue Agent Scott

3

Emerson, who offered expert testimony regarding trusts. He pointed out the misleading manner in which the nature of such trusts had been described by Miner. He also directed the jury to aspects of trust instruments that had been sold to Miner's clients, which would create the appearance that items of property were being held in trust when, in fact, ownership and control of the trust assets had not changed at all. In addition, Miner had included form documents and instructions for the purpose of setting up trust bank accounts without providing the taxpayer's Social Security number. The defendant also provided form letters for the clients' use in challenging any IRS instruction that the owner of the trust submit a trust tax return.

IRS employees were not alone in receiving threatening correspondence from Miner. The United States also provided the jury with testimony from Young Living Essential Oils and T.D. Bank, which had received letters from Miner on behalf of one of his clients who assets were the subject of IRS levies. Representatives from both entities testified regarding correspondence that their organizations had received in which Miner demanded that they not comply with IRS levies, and threatened legal consequences should the organizations comply.

In addition to demonstrating Miner's efforts to obstruct or impede the IRS, the Government offered testimony of the defendant's willful failure to satisfy his

4

own tax obligations. IRS Special Agent Susanne Lee provided the jury with a summary of the earnings that Miner had obtained through IRx Solutions and the Blue Ridge Group. She explained how that she computed those earnings, based upon bank records that had been obtained in the course of her investigation, and how that Miner had been obligated by law to file tax returns.

In addition to establishing the defendant's obligation to file tax returns, Special Agent Lee told the jury about the steps Miner had taken to hamper her investigation. For instance, he denied possessing any client files, while Lee later discovered that 11 boxes of client records were in a U-Haul parked right outside of where Miner was residing.

Much of Miner's strategy during the trial was devoted to arguing that he had a good faith belief in the positions underlying his actions, *i.e.*, that most individuals did not have the obligation to file tax returns or pay taxes. In response, the United States offered extensive evidence that Miner's actions were not in conformity with such a belief. For example, the Government produced bank account applications and signature cards that Miner had filled out in opening bank accounts for IRx Solutions and Blue Ridge Group. Such documents bore fictitious Social Security numbers and dates of birth. The United States reasoned that efforts such as these

5

to avoid or deflect IRS scrutiny would have been unnecessary for someone who truly believed there was no legal obligation to pay taxes.

## DISCUSSION

***The factors set forth in 18 U.S.C. § 3553(a)(2) favor the imposition of a Guideline sentence.***

As the Court and the defendant are aware, the sentence to be imposed should be "sufficient, but not greater than necessary" to meet the following needs as set forth in 18 U.S.C. § 3553(a)(2):

- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- (B) to afford adequate deterrence to criminal conduct;

- (C) to protect the public from further crimes of the defendant; and

- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Adherence to the Guidelines is particularly important in the case of criminal tax offenses, because of the important public policy goals that the tax laws seek to achieve. As stated in the Introductory Comments to the Part T of the Guidelines:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax

6

> prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

These policy goals, which are unique to tax offenses, would be satisfied through the imposition of a sentence at the top of the applicable Guideline range, and such a sentence would be sufficient, but not greater than necessary, to advance the goals set forth in 18 U.S.C. § 3553.

### 1. *Seriousness of the offense*

The income tax system in the United States relies heavily upon the voluntary compliance of taxpayers in correctly computing and paying the taxes they owe. Miner consciously engaged in a concerted effort to undermine the system of taxation. The nature of the defendant's offense highlights the particularized need for punishment that is consistent with the seriousness of his crime and will promote respect for the law.

Deliberately seeking to obstruct or impede that process is a serious offense, punishable by a fine of up to $250,000 and imprisonment for up to three years. *See* 26 U.S.C. § 7212. The failure to file tax returns, although a misdemeanor,

7

likewise carries a serious consequence -- imprisonment of up to one year.  26 U.S.C. § 7203.  A Guideline sentence is needed to reflect the seriousness of Miner's offenses, to promote respect for the law, and to provide just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).

    2.    *Deterrence*

A Guideline sentence is also warranted under Section 3553(a)(2)(B) and the need for a sentence that will deter future criminal conduct.  As noted above in the discussion of the Introductory Comments to Part T of the Sentencing Guidelines, the range of potential punishments embodied in the Guidelines are specifically designed to punish the violator and promote respect for the tax laws.  The overarching consideration of the Guidelines, as they relate to tax offenses, however, is deterrence.

From the standpoint of sentencing, deterrence takes two forms:  (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses.  A Guideline sentence in the present case would serve both purposes.

*Specific* deterrence, or deterrence that is directed toward a particular defendant, is a significant factor in this case. The evidence presented at trial presents a clear picture of an individual who wanted to subvert the system of taxation. Miner must be deterred from returning to similar crimes.

In addition to providing specific deterrence, the sentence in this case should be sufficiently severe to provide *general* deterrence. The nation's tax system can only function in an environment in which taxpayers can trust that everyone is required to pay his fair share and that those who seek to cheat the system will be punished. Since only a limited number of criminal tax matters are prosecuted, the sentences that are handed down by courts must deter future tax crimes.

Based upon his own testimony at trial, it appears that Miner has a significant following among individuals who oppose taxation and would seek to subvert the application of tax laws. Miner has written a book and other documentary materials, operated an Internet website, and spoken at various meetings, presumably on subjects related to defying the tax system. Accordingly, there is significant need for general deterrence in this case.

### 3. *Protecting the public*

Title 18, United States Code, Section 3553 (a)(2)(C) states that the Court should consider the extent to which a sentence is needed to protect the public from

9

further crimes by a defendant.  This factor is particularly important in the case of a defendant such as Miner, who views the conduct for which he has been convicted as a "crusade."[1]

As discussed above, tax crimes jeopardizes public confidence in the fairness of the tax system and indirectly harms every law-abiding taxpayer.  The defendant's unmitigated pattern of attempting to thwart the IRS, committed over more than a decade, suggests that Miner will continue to avoid his tax obligation, and encourage others to do the same, unless he learns that there will be a significant penal consequence for doing so.  Accordingly, the protection of the community from further crimes by Miner is of particular importance and strongly favors the imposition of a sentence at the upper end of the applicable Guideline range.

### 4. *The need for medical treatment*

In determining the appropriate sentence under 18 U.S.C. § 3553, the Court is also guided by the statute to consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional

---

[1] Without the benefit of a transcript, it is undersigned counsel's recollection that the defendant used this term while offering testimony in support of his request to remain on bond pending sentencing.

10

treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2)(D). It appears that Miner suffers from no unique medical condition that would elevate this factor above others in determining an appropriate sentence. The defendant's medical conditions, as noted in the PSR, are common and of the type routinely addressed through the health care afforded by the Bureau of Prisons. In light of his age, education, and work experience, there is no need to provide Miner with educational or vocational training.

## *CONCLUSION*

For the reasons set forth above, a sentence at the upper end of the permissible Guideline range would be consistent with the goals set forth in 18 U.S.C. § 3553.

>
> Respectfully submitted,
>
> WILLIAM C. KILLIAN
> United States Attorney
>
>
> By:   s/ Frank M. Dale, Jr.
>       FRANK M. DALE, JR.
>       Assistant United States Attorney
>       800 Market Street, Suite 211
>       Knoxville, Tennessee 37902
>       Telephone: (865) 545-4167

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, who access this filing through the Court's electronic filing system.

    /s Frank M. Dale, Jr.
FRANK M. DALE, JR.
Assistant United States Attorney
United States Attorney's Office
800 Market Street, Suite 211
Knoxville, Tennessee 37902
Telephone: (865) 545-4167